ELLIS, Judge.
This appeal presents for determination.a factual question arising out of an automobile accident which occurred in the Parish of Terrebonne on May 20, 1955.
The petition of the plaintiff, Royal J. Pellegrin, sets forth that just before the accident his 1953 Ford automobile was being driven in a southerly direction on the Point au Chien road in Terrebonne Parish at approximately nine miles from its intersection with the Houma-Montegut highway by his employee, Miss Lela Marie Savoie, in the latter’s proper lane of travel at a speed of fifteen to twenty miles per hour. At about 11:30 a. m., it is alleged, as Miss Savoie entered a curve to her right, the defendant, Nelo J. Hebert, who was proceeding in a northerly direction in his 1954 Chrysler, entered the curve in his left lane of travel and suddenly confronted Miss Savoie. It is further averred that as soon as Miss Savoie was confronted with the emergency she attempted to turn to her left to avoid a collision but was unable to do so in time with the result that the right front end of the defendant’s vehicle collided with the right front end of that of the plaintiff. The prayer is for the sum of $541 for physical damages to the Ford automobile, $104 for replacing the vehicle while being repaired, and $200 for loss to the plaintiff occasioned by his having to personally perform the duties of his employee Miss Savoie during the period that she was incapacitated.
The defendant’s answer denies any negligence on his part and avers that the collision occurred in his own lane of travel after he had brought his car to a stop. Assuming the position of plaintiff in recon-vention, he prayed for the sum of $1,100 as the amount lost by him as the result of the damages to his automobile. Alternatively, he pleaded as a defense contributory negligence on the part of Miss Savoie.
A companion suit was filed by Miss Savoie seeking $20,486.65 for the physical damages sustained by her. The Travelers Indemnity Company, workmen’s compensation insurer of Pellegrin, intervened in this suit seeking the sum of $314.13 representing compensation benefits, doctor and hospital bills paid by it to or on behalf of Miss Savoie as the result of the accident.
The suits were consolidated for trial in the Court below following which judgment was rendered in favor of Pellegrin in the sum of $541, in favor of Miss Savoie in the sum of $3,470.50 and in favor of Travelers in the sum of $314.13. Following the taking of appeals by the defendant, Pelle-grin and Miss Savoie answered the appeals asking that their awards be increased *855 to the amounts originally prayed for. Travelers likewise answered the appeal asking that the amount awarded in its favor be affirmed.
The trial judge, in his written reasons for judgment, resolved the question of liability as follows:
“The place of the accident was approximately one mile above the Hebert store at the end of the Point au Chien Road. It is pictured, generally speaking, in photographs D-l, D-2 and D-3.
“As the Pellegrin automobile was approaching the scene of the accident, it approached a curve to its right. The road is shelled and approximately eighteen (18) or nineteen (19) feet wide. The width of the road is testified to by both Mr. Pellegrin and State Trooper Waguespack. There was an almost full head-on collision. The right three-quarters of the front end of the two vehicles collided. The left front headlight of each vehicle was unbroken (See D-l artd D-6). There was a dispute concerning the portion of the road on which the collision occurred. One or both of the vehicles were out of their proper lane of traffic. Generally speaking, some of the witnesses appeared to be bitterly opposed to the parties against whom they appeared as witnesses.
“The Court gathers the following facts from the witnesses:
“Miss Savoie was traveling at a speed of between twenty-five (25) and (30) miles per hour (see Tr. p. 22). George Ellender (Tr. p. 50) and Mrs. Clarence Naquin (Tr. p. 56) estimated the same speed.
“Mr. Hebert states that he was traveling fifteen (15) miles per hour (Tr. p. 2). Chiasson, an occupant of the Hebert car, states that Mr. Hebert was traveling between twenty-five (25) and thirty (30) miles per hour (Tr. p. 37). There is other testimony in the record that Mr. Hebert 'was traveling faster than fifteen (15) miles per hour, though at a moderate rate of speed.
“George Ellender, (Tr. p. 50) and Mrs. Clarence Naquin (Tr. p. 56) were standing from one hundred fifty (150) to two hundred (200) feet above the place of the collision at a shrimp plant of a Mr. Billiot. They each testified that they knew and recognized Miss Savoie as she passed and that she was traveling in her own proper lane- of traffic.
“Two hundred feet below the location of the accident, where Mrs. Du-pre lives, she states on page 42 of the testimony in regard to Mr. Hebert: He was on the left side. I thought he was going to put down my mail box when he passed in front’. She then explained that this put Hebert on the wrong side of the road. She does not drive a car, but she also estimated his speed at twenty-five (25) to thirty (30) miles an hour.
“A Mr. Sidney Robicaux, a passenger in the Hebert automobile, also placed the Hebert vehicle on the extreme left side of the road. We bear in mind that Mr. Robichaux filed a damage suit against Mr. Hebert.
“Witnesses for the defendant, who lived and were on the opposite side of the bayou, testified that Mr. Hebert was on his right side of the road at about the same place that Mrs. Dupre stated that he was on the wrong side of the road. The view of the roadway from the porch or the house across the bayou, in the opinion of the Court, is not as clear as the roadway was or is from the Dupre house, which is approximately forty (40) feet from the road, with an unobstructed view for at least a short distance.
“The two colliding vehicles stayed on the roadway until the State Trooper arrived. Mr. Hebert was particularly *856 careful that nothing be disturbed or moved until the State Trooper arrived. We believe that it is safe to assume that neither of the vehicles was moved before the pictures were taken.
“Mr. Hebert testified on transcript page 3:
“ 'Q. Did you cut over to the left at anytime before the accident?
“ ‘A. No.’ and he further stated on transcript page 5:
“ ‘A. What I did ? I throwed in my brakes, and I said “let the hair go with the skin” to myself and she run right into me. She run her right fender right into my right fender, and when she hit me. I was on a dead stop. I I didn’t back; I didn’t advance, but she threw me to the left to the west side to the middle of the road.’
“He then stated on the same transcript page 5 in reference to the Pelle-grin car:
“ ‘Her car backed up I would say around twenty feet right back. When she hit she bounced back and she bounced back to the left hand side of the road going down dose to the bayou.’
“According to Officer Waguespack, the automobiles were no more than five (5) or six (6) feet apart when he arrived at the scene of the accident.
“All of the plaintiff witnesses placed the Pellegrin automobile in its proper lane of traffic after the accident. Practically all of the defendant witnesses placed the Hebert automobile in the middle of the road, or only partly in its own left lane of traffic.
“Taking this whole case into consideration, and assuming all of the witnesses were doing their best to tell what they saw, this Court concludes that as the two vehicles approached this curve, which was at least to some degree a blind curve and not easy to see far beyond, that'the plaintiff’s automobile was in its proper lane of traffic, and that the Hebert automobile was in its improper lane of traffic. This is true while each vehicle was approaching the point of impact and while each was approximately two hundred (200) feet from colliding.
“None of the witnesses actually saw the impact except the two automobile drivers, unless Mr. Sidney Robichaux saw it. Each of the two drivers insists that their vehicles were in their respective proper lanes of traffic.
“Photographs P-1 and P-2 show the view of the wrecked situation from the rear of the Hebert Chrysler vehicle. The left rear wheel of the defendant’s vehicle is practically on its own left edge of the shelled portion of the road. The front part of the Chrysler is angled slightly toward the center of the road, with the right front wheel almost to the center.
“Photograph P-3 shows the scene from the rear of the plaintiff’s Ford automobile. The center of the rear part of plaintiff’s Ford, we say, rests in the center of the road, with the front end angled over towards the plaintiff’s own right side of the road.
“Pictures may be deceptive, but Photograph P-3 appears to show the left front tire of plaintiff’s automobile to be in its proper lane of traffic. (What the Lower Court meant to say is that according to photograph P-3 it appears that the left front tire of defendant’s automobile to be in its improper lane of traffic.)
“State Trooper Waguespack, defendant’s witness (Tr. p. 93), agreed that it was logical, on examining the photograph marked P-2, to assume that the Chrysler owned by the defendant was traveling on the left side of the road. In prior testimony, however, Trooper Waguespack had stated *857 that it was possible that this was not true.
“Mr. L. E. Lapeyrouse, Chrysler dealer of Houma, testifying for the defendant, though testifying from his memory and general knowledge on the subject (Tr. p. 85), stated that the Chrysler would outweigh the Ford some eight hundred (800) to one thousand (1,000) pounds.
“Mr. Hebert insists that he was stationary when the impact occurred. Other witnesses testified that his car was in motion. The above quoted testimony of Mr. Hebert from the early portion of his testimony is to the effect that he put on his brakes and prepared to be hit. Normal human reaction would probably cause him to hold his brakes and to hold on for the impact.
“This court does not believe that the lighter Ford automobile pushed or knocked the heavier Chrysler automobile from the middle of the road over on the edge of the traveled portion of the highway. It is reasonable to believe, and we do, that each vehicle moved some, the Ford more than the Chrysler. Examining Photograph P-4, it appears to demonstrate how the two automobiles were lined up before and after the impact. There is a skid or push mark shown on this photograph that may well demonstrate how the Ford, after hitting the Chrysler, bounced back five (5) or six (6) feet and left the trace of its left front wheel. There is no testimony in the record, however, that the line of disturbed shell leading off from the left front wheel of the Ford is actually the push back trace of that wheel.
“This Court is convinced, however, that at the point of impact, which occurred just after the Ford rounded the curve, the Chrysler was in its wrong lane of traffic, and that the impact occurred in plaintiff’s right lane of traffic.
“These two vehicles were traveling each approximately twenty-five (25) or thirty (30) miles per hour when each was approximately two hundred (200) feet from the point of impact. They were, therefore, approaching each other at a combined rate of speed that is rapid. Assuming that Mr. Hebert was traveling only fifteen (15) miles per hour, their combined speed was still in the neighborhood of fifty (50) miles per hour. Taking into consideration the reaction time of each of the parties, it is difficult to see how an accident could have been avoided by either of the parties after they came in sight of each other, which according to the testimony of Mr. Hebert, was one hundred fifty (150) feet.
“Under the circumstances recited, Mr. Hebert must be held responsible for the accident.”
A study of the testimony in the record fails to show any manifest error on the part of the trial judge. Moreover, an examination of the photographs introduced convinces us, as it did the lower court, that the accident occurred in Miss Savoie’s lane of travel.
The lower court awarded Pelle-grin the sum of $541 for the damages to his vehicle, which was proper, but disallowed the claim for loss of use of the vehicle on the ground that he did not have it repaired, which we likewise think was proper. The claim for inconvenience suffered as the result of having to perform Miss Savoie’s duties for a period of time was disallowed as being too speculative, which we likewise think was correct.
We find no manifest error in the judgment appealed from and the same is hereby affirmed.
Affirmed.
LOTTINGER, J., recused.